# United States Bankruptcy Court
## Central District of California
Los Angeles
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

**Wednesday, August 22, 2018**                                                                 Hearing Room    1568

<u>11:00 AM</u>
**2:16-13575**    **Liberty Asset Management Corporation**                                                       Chapter 11

  **#102.00**    HearingRE: [693] Application for Compensation Application Of JD Brothers LLC For An Order Granting Administrative Expense Treatment For Substantial Contribution To Estate For Work As (1) Chair Of The Unsecured Creditors Committee; (2) Creditors Committee Member; and (3) Individual Creditor for JD Brothers LLC, Creditor's Attorney, Period: 3/21/2016 to 7/2/2018, Fee: $28,550.00, Expenses: $2,100.72.

                                  Docket      693

**Matter Notes:**

   8/23/2018

   The amended tentative ruling will be the order.
   Party to lodge order: Movant

   **POST PDF OF  AMENDED TENTATIVE RULING TO CIAO**

**Tentative Ruling:**

   8/23/2018

   For the reasons set forth below, the Motion is GRANTED IN PART and DENIED IN PART. JD's request for administrative expense priority for expenses in the amount of $2,100.72 is GRANTED. JD's request for administrative expense priority for fees incurred by its attorney, C. Alex Naegele, in the amount of $28,550.00 is DENIED. (Amended after hearing in RED to address arguments presented by counsel for Mr. Kirk.)

   **Pleadings Filed and Reviewed:**

   1)  Application of JD Brothers LLC for an Order Granting Administrative Expense Treatment for Substantial Contribution to Estate for Work as (1) Chair of the Unsecured Creditors Committee; (2) Creditors Committee Member; and (3) Individual Creditor [Doc. No. 693] (the "Motion")

# United States Bankruptcy Court
# Central District of California
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

**Wednesday, August 22, 2018**                                                           **Hearing Room    1568**

<u>11:00 AM</u>
**CONT...        Liberty Asset Management Corporation                                             Chapter 11**
      a)  Notice of Hearing on [Motion] [Doc. No. 695]
2) Objection of Benjamin Kirk to the Application of JD Brothers LLC for an Order Granting Administrative Expense Treatment for Substantial Contribution to Estate for Work as (1) Chair of the Unsecured Creditors Committee; (2) Creditors Committee Member; and (3) Individual Creditor [Doc. No. 713] (the "Opposition")
3) Reply to Objection of Benjamin Kirk to Application of JD Brothers LLC for an Order Granting Administrative Expense Treatment for Substantial Contribution to Estate for Work as (1) Chair of the Unsecured Creditors Committee; (2) Creditors Committee Member; and (3) Individual Creditor [Doc. No. 715] (the "Reply").

## I. Facts and Summary of Pleadings

Liberty Asset Management Corporation ("Liberty") commenced a voluntary Chapter 11 petition on March 21, 2016. From March 21, 2016 to January 29, 2017, the Hon. Thomas B. Donovan presided over this case. On January 30, 2017, the case was reassigned to the undersigned Judge. Doc. No. 325.

On June 9, 2016, the Court granted Liberty's application to employ Lawrence R. Perkins as Chief Restructuring Officer ("CRO"), with such employment effective as of March 28, 2016. Doc. No. 94.

On June 18, 2018, the Court confirmed a Plan of Liquidation (the "Plan"), proposed by Liberty's Official Committee of Unsecured Creditors (the "Committee"). Doc. No. 665. The Plan provides for the liquidation of Liberty's assets, with such liquidation to be overseen by a Plan Administrator. Bradley D. Sharp of Development Specialists, Inc. ("DSI") is presently serving as the Plan Administrator. Mr. Sharp has retained Pachulski Stang Ziehl & Jones LLP, the law firm that advised the Committee, to represent him in overseeing the liquidation.

JD Brothers LLC ("JD") moves for allowance of an administrative expense claim pursuant to §§503(b)(3)(D), (b)(3)(F), and (b)(4). JD seeks fees in the amount of $28,550.00 and expenses in the amount of $2,100.72. The fees are sought for the work that attorney C. Alex Naegele performed advising JD, which served as the Chair of the Official Committee of Unsecured Creditors (the "Committee"). Benjamin Kirk opposes the Motion.

**<u>JD's Motion for Allowance of an Administrative Expense Claim</u>**
    JD makes the following arguments and representations in support of the Motion:

# United States Bankruptcy Court
## Central District of California
Los Angeles
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

**Wednesday, August 22, 2018**                                                                 Hearing Room    1568

11:00 AM
**CONT...**        **Liberty Asset Management Corporation**                                                   **Chapter 11**

    Because of the unique manner in which this case unfolded, counsel for the Committee was responsible for performing most of the work. The issues with the Debtor's insiders made it such that there was not even really a Debtor client for the Committee to consult, and there were no records. JD, in its capacity as Chair of the Committee, was required to invest substantial time and resources communicating with the Committee's counsel regarding the direction of the case. Specifically, JD had responsibility for day-to-day management of the Committee. In this role, the Chair reviewed and commented on nearly every pleading, e-mail, and document sent by counsel for the Committee. The work JD performed was essential to the ultimate confirmation of the Committee's liquidating plan.

    Mr. Naegele's billing rate of $250 per hour is well below the market rate of $450 per hour of similarly qualified professionals. Mr. Naegele has been selected as a Northern California Super Lawyer "rising star" in the field of business bankruptcy for the years 2016, 2017, and 2018. The fees of $28,550.00 and expenses of $2,100.72 are modest when compared to the benefit realized by the estate as a result of JD's work.

### **Benjamin Kirk's Opposition**
    Benjamin Kirk makes the following arguments in Opposition to the Motion:

    JD is not entitled to an administrative expense claim for any legal fees incurred by its outside counsel for work performed assisting JD in fulfilling its responsibilities as Chair of the Committee. Section 503(b)(3)(F) allows, as an administrative expense, the "actual, necessary expenses … incurred by … a member of a committee appointed under section 1102 …." However, §503(b)(4) does not allow as an administrative expense fees incurred by a Committee members' professionals. Thus, the plain language of the statute bars the Court from awarding the relief sought by JD.

    Even if JD's professional, Mr. Naegele, was entitled to an administrative expense claim, JD has failed to show that JD has made a substantial contribution to the case. There is no evidence that Mr. Naegele did anything other than the basic things an attorney would need to do for his client under the circumstances. Mr. Naegele's time records reflect that he did little more than review the Debtor's schedules and pleadings, work on an objection to a fee application that Mr. Naegele's own time entries indicate he subsequently withdrew, lobby the United States Trustee to sit on the Committee, and prepare for and attend the Debtor's first meeting of creditors. These activities are routinely undertaken by unsecured creditors such as JD in a Chapter 11 case.

# United States Bankruptcy Court
## Central District of California
Los Angeles
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

**Wednesday, August 22, 2018**                                                                 Hearing Room    1568

<u>11:00 AM</u>
**CONT...        Liberty Asset Management Corporation                                              Chapter 11**

It is true that a liquidating plan was ultimately confirmed. But there is no evidence that tasks undertaken by Mr. Naegele on JD's behalf were more than incidental to that result. JD hired Naegele to protected and preserve its $24 million claim. At most, it can be said that Mr. Naegele did that.

**<u>JD's Reply in Support of the Motion</u>**
JD makes the following arguments in its Reply to Benjamin Kirk's Opposition:

Benjamin Kirk lacks standing to object to the Motion. JD's application for an administrative expense claim was directed not against Kirk but against the funds in the estate. Mr. Kirk holds only an equity interest in the Debtor. Because there is only $4–5 million to distribute to unsecured creditors, and $80 million or more in claims, Mr. Kirk will never receive a distribution on account of his equity interest. Thus, Mr. Kirk will not be adversely affected by an order awarding JD an administrative expense claim. Because no party that has standing has objected, the Motion should be granted.

To the extent the Court entertains Mr. Kirk's arguments, then Mr. Kirk must necessarily have standing, which means Mr. Kirk must have a pecuniary interest in the estate. Such a pecuniary interest would amount to an unsecured claim against the estate. But Mr. Kirk cannot assert such a pecuniary interest, because he failed to timely file a proof of claim, and he has failed to pay the $75 million dollar judgment entered against him and in favor of the estate.

Even if Mr. Kirk had standing, his arguments lack merit. Pursuant to §503(b)(3)(D), the "actual, necessary expenses" of a creditor "in making a substantial contribution in a case under chapter … 11" are entitled to administrative expense status. In the Ninth Circuit, the "principal test of substantial contribution is 'the extent of benefit to the estate.'" *Cellular 101, Inc. v. Channel Communications, Inc. (In re Cellular 101, Inc.)*, 377 F.3d 1092, 1096–97 (9th Cir. 2004). Here, the work JD performed as Committee Chair was necessary and benefitted the estate. The Court ordered mediations that JD was required to attend. JD was required to sign declarations, which JD was required to review given its fiduciary responsibilities to the Committee.

## II. Findings and Conclusions
### A. Benjamin Kirk Lacks Standing to Object
At the hearing, Mr. Kirk appeared through counsel and argued that he had standing to object under §1109(b) and *Motor Vehicle Cas. Ins. Co. v. Thorpe*

United States Bankruptcy Court
Central District of California
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

**Wednesday, August 22, 2018**      **Hearing Room**    **1568**

11:00 AM
**CONT...**     **Liberty Asset Management Corporation**     **Chapter 11**

*Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 884 (9th Cir. 2012). Having considered Mr. Kirk's arguments, the Court finds that for purposes of this Motion, he lacks standing.

    First, it is important to emphasize that the Court's findings with respect to Mr. Kirk's standing apply only to the present Motion. It is not the Court's intent to find that Mr. Kirk could never have standing to object in any future matter which may arise in this case. Having said that, it is also important to note that if Mr. Kirk chooses to object to other actions taken by the Plan Administrator or other interested parties, the Court expects such an objection to establish Mr. Kirk's standing, consistent with the findings set forth below.

    Determining standing on a motion-by-motion basis is consistent with *In re Thorpe Insulation Co.* In *Thorpe*, the court explained that to evaluate standing, courts "'must determine on a case by case basis whether the prospective party has a sufficient stake in the proceedings so as to require representation.'" *Thorpe*, 677 F.3d at 884 (citing *In re Amatex Corp.,* 755 F.2d 1034, 1042 (3rd Cir.1985)). In a complex Chapter 11 proceeding such as the present case, constantly changing circumstances mean that the question of whether a prospective party has a sufficient stake in the proceedings may evolve over time.

    Mr. Kirk does not have standing to object to the instant Motion. To have standing, Mr. Kirk must meet three requirements:

    1) [He] must meet statutory "party in interest" requirements under § 1109(b) of the [B]ankruptcy [C]ode;
    2) [He] must satisfy Article III constitutional requirements; and
    3) [He] must meet federal court prudential standing requirements.

*Thorpe*, 677 F.3d at 884.
    Section 1109(b) provides:

    A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

    Prior to confirmation of Liberty's Plan, Mr. Kirk asserted that he held 100% of the equity in Liberty. Mr. Kirk's claim to 100% of Liberty's equity was disputed by Lucy

# United States Bankruptcy Court
## Central District of California
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

**Wednesday, August 22, 2018**       Hearing Room    **1568**

#### 11:00 AM
**CONT...**      **Liberty Asset Management Corporation**      **Chapter 11**

Gao; testimony elicited in connection with a previous hearing had established that Ms. Gao might hold a 20–50% beneficial interest in Liberty. The Court did not rule upon the issue of who held Liberty's equity in connection with confirmation of the Plan.

Liberty's Plan was confirmed on June 18, 2018. Doc. No. 665. The Effective Date **[Note 1]** of the Plan was July 2, 2018. Doc. No. 678. Holders of equity interests in Liberty are members of Class 4 under the Plan. The Plan provides that as of the Effective Date, all interests classified in Class 4 "will be deemed cancelled …." Plan at ¶V.F [Doc. No. 609, Ex. A]. The Plan further provides that "[h]olders of Interests [Class 4] will receive no distribution under the Plan …." *Id.*

Thus, any equity interest Mr. Kirk may have held in Liberty **[Note 2]** prior to the Effective Date has now been cancelled. Further, Mr. Kirk is not entitled to any distribution under the Plan on account of any equity interest he may have formerly held in Liberty.

Because all equity interests in Liberty have now been cancelled, Mr. Kirk is not an "equity security holder" and therefore he does not qualify as "party in interest" within the meaning of §1109(b). Mr. Kirk is not a creditor because he has not filed a Proof of Claim. Accordingly, Mr. Kirk lacks standing to object to the Motion.

In addition, Mr. Kirk does not satisfy Article III's constitutional requirements for standing. To satisfy Article III's standing requirements, a party must be "a 'person aggrieved'" by the decision of the Court. *Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.)*, 177 F.3d 774, 777 (9th Cir. 1999). A party is aggrieved if he or she is "directly and adversely affected pecuniarily by an order of the bankruptcy court"; the Court's order must diminish the party's "property, increase [his] burdens, or detrimentally affect [his] rights." *Id.* at 777.

As set forth above, any equity interest Mr. Kirk may have held in Liberty has been cancelled, and Mr. Kirk is not entitled to any distribution under the Plan on account of any such equity interest. Since Mr. Kirk cannot receive any property under the Plan, he is not adversely affected pecuniarily by an order fixing the amount of an administrative expense claim.

At the hearing, Mr. Kirk argued that *PRTC*'s "person aggrieved" standard does not apply, because *PRTC* determined appellate standing. Mr. Kirk's argument lacks merit. *PRTC* did evaluate standing within the context of an appeal, but its "person aggrieved" standard is equally applicable to standing before the Bankruptcy Court.

~~To have standing to object, a party must be "a 'person aggrieved'" by the decision of the Court. *Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.)*, 177 F.3d 774, 777 (9th Cir. 1999). A party is aggrieved if he or she is "directly and~~

# United States Bankruptcy Court
## Central District of California
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

**Wednesday, August 22, 2018**             **Hearing Room**    **1568**

<u>11:00 AM</u>
**CONT...**      **Liberty Asset Management Corporation**                          **Chapter 11**

~~adversely affected pecuniarily by an order of the bankruptcy court"; the Court's order must diminish the party's "property, increase [his] burdens, or detrimentally affect [his] rights." *Id.* at 777.~~

~~Benjamin Kirk lacks standing to object to the Motion because he will not be adversely pecuniarily affected by an order awarding JD an administrative expense claim. Mr. Kirk asserts that he holds 100% of the equity in Liberty. Testimony elicited in connection with a previous hearing established that Lucy Gao may hold a 20–50% beneficial interest in Liberty. The Court has never ruled upon the issue of who holds Liberty's equity, and makes no such ruling today. However, assuming *arguendo* that Mr. Kirk and Ms. Gao are the holders of Liberty's equity, allowance of JD's administrative expense claim would not affect Mr. Kirk's ability to receive a distribution from the estate.~~

~~Under the Plan, Mr. Kirk is a member of Class 4. The only way that Class 4 could receive any distribution in connection with the liquidation of Liberty's assets would be if the Committee succeeds in collecting upon the $74 million judgment against Mr. Kirk and Ms. Gao. Absent that judgment, the Committee anticipates that between $11.9 million and $13.8 million will be available for distribution to general unsecured creditors. General unsecured claims are estimated to be between $75 million and $80 million. Therefore, Mr. Kirk and Ms. Gao would not receive a distribution unless the Committee collected upon its judgment against them. Of course, if the Committee collected upon the judgment, the distribution would be economically meaningless since it would merely return to Mr. Kirk and Ms. Gao the funds that had been collected from them.~~

**B. Under the Plain Language of the Statute, JD is Not Entitled to an Administrative Expense Claim for Fees Incurred by its Counsel for Work Performed as the Chair of the Committee**

     Section 503(b)(3) allows, as an administrative expense, the "actual, necessary expenses" incurred by:

> (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title [or] …

> (F) a member of a committee appointed under section 1102 of this title, if such

# United States Bankruptcy Court
## Central District of California
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

**Wednesday, August 22, 2018**      Hearing Room    1568

11:00 AM
**CONT...**      **Liberty Asset Management Corporation**      **Chapter 11**

expenses are incurred in the performance of the duties of such committee ….

Section 503(b)(3) expressly excludes allowance of "compensation and reimbursement specified in" §503(b)(4)—that is, "compensation for professional services rendered by an attorney or an accountant" of an entity whose expenses are allowable under § 503(b)(3). Section 503(b)(4) allows compensation for professionals employed by entities whose expenses are allowable under §503(b)(3)(A), (B), (C), (D), and (E). However, §503(b)(4) does not allow compensation for professionals employed by entities whose expenses are allowable under §503(b)(3)(F)—that is, a member of an official committee of creditors or equity security holders.

As one court has explained:

> Relevant here, official committee members' professional fee expenses are not included in § 503(b). The problem is not that such expenses are not listed—the list is not exhaustive—but instead that the structure of § 503(b)(3) and (4) glaringly exclude professional fee expenses for official committee members. *See* 11 U.S.C. § 503(b)(3), (4).⁴ Specifically, § 503(b)(3) allows for the payment of "actual, necessary expenses" incurred in situations listed in § 503(b)(3)(A) through (F), all of which involve work contributing to the bankruptcy case. *See* 11 U.S.C. § 502(b)(3). Section 503(b)(3)(F) provides for the payment of the expenses incurred by official committee members in performing committee work. Section 503(b)(3), however, explicitly excludes *professional fee* expenses—that is, the cost of hiring lawyers or accountants—from the expenses it authorizes. *Id.* § 503(b)(3). Professional fee expenses are instead covered by § 503(b)(4). That section authorizes professional fee expenses for any entity that qualifies for expenses under § 503(b)(3)(A) through (E). *Id.* § 502(b)(4). Importantly, entities eligible for expenses under § 503(b)(3)(F)—members of an official committee—are not covered by § 503(b)(4). *Id.* Consequently, § 503(b)(3) and 503(b)(4) work together to guarantee full payment for any professional fee expense incurred in a situation covered by § 503(b)(3)(A) through (E), but not (F).

*Davis v. Elliot Management Corp. (In re Lehman Bros. Holdings Inc.)*, 508 B.R. 283, 290 (S.D.N.Y. 2014).

*Collier on Bankruptcy*, the leading treatise, explains that in certain instances a committee member may be entitled to allowance of an administrative expense claim:

# United States Bankruptcy Court
## Central District of California
Los Angeles
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

**Wednesday, August 22, 2018**                                              Hearing Room    1568

11:00 AM
**CONT...**    **Liberty Asset Management Corporation**                                              **Chapter 11**

> The exclusion of subparagraph (F) does not mean that a committee member is never entitled to have such member's professional fees awarded administrative expense status. Although a committee appointed under section 1102 is excluded from the "substantial contribution" provision in section 503(b)(3)(D), an individual committee member that makes a "substantial contribution" under section 503(b)(3)(D) as a creditor or equity security holder, *independent of the work of the committee*, is eligible to seek administrative expense status for professional fees under section 503(b)(4).

4 Collier on Bankruptcy P 503.11 (16th ed. 2018) (emphasis added).

Here, JD's professional Mr. Naegele is not entitled to fees under §503(b)(4), on account of JD's expenses under §503(b)(3)(D), because the work JD performed was not independent of the work of the Committee. To the contrary, throughout the Motion JD emphasizes that the work it performed was in furtherance of its role as Committee Chair. Accordingly, Mr. Naegele is entitled to an administrative expense claim under §503(b)(4)'s incorporation of §503(b)(3)(D).

Further, basic principles of statutory construction do not permit allowance of fees for JD's professionals pursuant to §503(b)(4)'s incorporation of §503(b)(3)(D). Section 503(b)(3)(D) allows administrative expense status for fees incurred by professionals employed by a "creditor … in making a substantial contribution …." Although JD is a creditor, §503(b)(3)(F) contains a more specific provision applicable to the type of claim asserted by JD. Under §503(b)(3)(F), expenses incurred by a committee member "in the performance of the duties of such committee" are allowed. Unfortunately for JD, §503(b)(4) does not allow the expenses of professionals employed by a creditor serving on a committee. It would not be appropriate for the Court to allow fees for JD's professional under a generalized provision where a more specific provision does not provide for the allowance of such fees.

However, under the plain language of §503(b)(3)(F), JD is entitled to expenses incurred performing its duties on the Committee. Accordingly, the Court will allow the $2,100.72 in expenses sought in the Motion.

The Court's ruling is in no way intended to derogate the work performed by JD as Chair of the Committee. Having reviewed the Motion and the time records submitted by JD's counsel, the Court agrees that JD's efforts as Committee Chair were instrumental in facilitating confirmation of the Plan. Unfortunately, under these circumstances, the statute does not permit the Court to award administrative expense status for fees incurred by JD's professionals.

# United States Bankruptcy Court
# Central District of California
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

**Wednesday, August 22, 2018**                                                                       Hearing Room    1568

11:00 AM
**CONT...**       **Liberty Asset Management Corporation**                                                   **Chapter 11**

    No appearance is required if submitting on the court's tentative ruling. If you intend to submit on the tentative ruling, please contact Cameron Schlagel or Daniel Koontz at 213-894-1522. **If you intend to contest the tentative ruling and appear, please first contact opposing counsel to inform them of your intention to do so.** Should an opposing party file a late opposition or appear at the hearing, the court will determine whether further hearing is required. If you wish to make a telephonic appearance, contact Court Call at 888-882-6878, no later than one hour before the hearing.

**[Note 1]**
    Unless otherwise indicated, terms not defined herein have the meaning set forth in the Plan.

**[Note 2]**
    The Court makes no determination as to whether Mr. Kirk held any equity interest in Liberty prior to the Effective Date.

| Party Information |
|---|

**Debtor(s):**

    Liberty Asset Management                          Represented By
                                                           David B Golubchik
                                                           Jeffrey S Kwong
                                                           John-Patrick M Fritz
                                                           Eve H Karasik
                                                           Sandford L. Frey
                                                           Raphael Cung